IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 02-582-1 |
| | : | |
| CLAYTON LEE WAAGNER | : | CIVIL ACTION |
| | : | 14-550 |

June _16, 2014                                                                                           Anita B. Brody, J.

### MEMORANDUM

Currently before me is Clayton Lee Waagner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth below, I will deny Waagner's § 2255 motion.

## I. BACKGROUND[1]

On September 9, 2002, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Waagner with multiple counts of threatening to use a weapon of mass destruction, mailing threatening communications, threatening interstate communications, and violating the Freedom of Access to Clinic Entrances Act ("FACE"), in violation of 18 U.S.C. §§ 2332a(a)(2), 876, 875(c), and 248(a)(1), respectively. Waagner represented himself throughout all of the criminal proceedings, including at trial and sentencing. The Court appointed standby counsel to assist him.

On November 18, 2003, the trial began. During the trial, the Government presented evidence that Waagner had mailed hundreds of anthrax threat letters containing a powdery substance to facilities he believed to be women's reproductive health care clinics throughout the eastern United States that performed abortions. Although the powdery substance in the letters

---

[1] The facts are taken from the record developed prior to the filing of the instant motion and the exhibits attached to the petition.

1

was not anthrax, and turned out to be harmless, the people who received these threat letters testified that they feared they would die of anthrax poisoning.  An FBI agent testified that Waagner had confessed to sending the anthrax threat letters, and described himself as a terrorist fighting a war on the abortion industry.  In addressing the jury, Waagner told them, "As has been clearly demonstrated that I am the anti-abortion extremist, a terrorist to the abortion industry. There's no question there that I terrorized these people any way I could. . . .  I did it systematically, I did it over a period of time, I worked as hard as I could to do that."  Tr. 12/3/03 at 51.

On December 3, 2003, the jury convicted Waagner of fifty-one counts of threatening to use a weapon of mass destruction,  mailing threatening communications, threatening interstate communications, and violating FACE, in violation of 18 U.S.C. §§ 2332a(a)(2), 876, 875(c), and 248(a)(1), respectively.

Prior to sentencing, the probation office prepared a Presentence Investigation Report ("PSR").  The PSR disclosed that, on February 11, 2000, Waagner was diagnosed with Adjustment Disorder with disturbance of emotions and conduct, Chronic Delusional Behavior, grandiose type, and Adult Anti-Social Behavior.  PSR ¶ 151.  Additionally, the PSR explained that Waagner's Chronic Delusional Disorder manifested itself in the form of grandiose delusions, which are "irrational beliefs of inflated worth, power, knowledge, identity or special relationship to a deity or famous person."  *Id.* at ¶ 152.  Specifically, Waagner believed that "God wanted him to kill abortion doctors."  *Id*.

On July 7, 2005, the Court sentenced Waagner to 228 months of incarceration, three years of supervised release, and a $2,725.00 special assessment.  Waagner did not file an appeal of his conviction and sentence.

On February 10, 2014, more than eight years after his conviction became final, Waagner filed his motion for habeas corpus relief pursuant to 28 U.S.C. § 2255. Waagner attached two exhibits to his petition. Both exhibits are letters that Waagner wrote in 2011. The first exhibit is a letter to the Discovery Channel and the second exhibit is a letter to Planned Parenthood. *See* Pet. Exs. A, B. In both letters, Waagner apologizes for sending the anthrax threat letters to abortion clinics. In the Discovery Channel letter, Waagner states:

> I have come to respect those who work to protect a woman's legal right to choose. I understand now that they work at the clinics out of a genuine conviction of belief. I respect their stand on principle and admire their courage and tenacity. They did not deserve the terror I inflicted on them and I am truly sorry for my crimes against them.

Pet. Ex. A. Waagner expresses an almost identical sentiment in the Planned Parenthood letter. In both letters, Waagner explains that he began feeling shame for what he had done in the years after his trial. By the end of 2009, he shared his shame with his family, and in 2010, he shared his new views of nonviolence with anti-abortion extremists. Waagner implores people opposed to abortion "to become involved in the debate in a strictly legal manner. . . . And to participate in peaceful, legal protest. . . . And above all learn from my mistakes. Abortion is legal in America, so any efforts to prevent the act is in violation of our laws." *Id.* Additionally, he acknowledges in both letters that he no longer has any legal remedies available to him to challenge his sentence.

## II. STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the

motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[2] *Id.*

## III. DISCUSSION

Waagner raises six grounds for relief in his petition: (1) he was denied his Sixth Amendment right to counsel; (2) the Court imposed an illegal general sentence; (3) the Court's sentence violated the double jeopardy clause; (4) the Court's sentence was illegal in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013); (5) he is actually innocent of his eighteen counts of conviction under 18 U.S.C. 2332a(a)(2); and (6) cumulative error. The Government argues that all of Waagner's claims are untimely.

A one-year period of limitation applies to petitions filed under § 2255. 28 U.S.C. 2255(f). That limitation period runs from the latest of

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Waagner concedes that the limitation period for all of his claims began to run on the date on which the judgment of conviction became final, with the exception of his claim that his sentence was illegal in light of *Alleyne*.

Waagner argues that his *Alleyne* claim is timely under 2255(f)(3) because the Supreme Court recognized a new right in *Alleyne* less than a year before he filed his petition. In order for a petitioner to timely raise a claim under § 2255(f)(3), the right that was allegedly denied must be

---

[2] No evidentiary hearing is necessary because the motion, exhibits, and records conclusively establish that Waagner is not entitled to relief.

4

"newly recognized by the Supreme Court and *made retroactively applicable* to cases on collateral review." *Id.* (emphasis added). The Third Circuit has explicitly held "that *Alleyne* cannot be applied retroactively to cases on collateral review." *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014). Therefore, Waagner cannot succeed on this claim because *Alleyne* does not provide a basis for Waagner to seek collateral review pursuant to § 2255.

Waagner acknowledges that his remaining claims were not filed within the one-year period after his conviction became final. However, Waagner argues that the late filing of his § 2255 petition should be excused because he is actually innocent of certain charges against him and, in the alternative, that all of his claims are timely due to equitable tolling.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." Waagner argues that his habeas claims may pass through this gateway because he is actually innocent of all counts of conviction for violating 18 U.S.C. § 2332a(a)(2). Section 2332a(a)(2) provides:

> A person who, without lawful authority, uses, *threatens*, or attempts or conspires to use, a weapon of mass destruction . . .
>  (2) against any person or property within the United States, and
>   (A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense;
>   (B) such property is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce;
>   (C) any perpetrator travels in or causes another to travel in interstate or foreign commerce in furtherance of the offense; or
>   (D) the offense, or the results of the offense, affect interstate or foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce; . . .
> shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C.A. § 2332a(a)(2) (emphasis added). Waagner argues that he is innocent of threatening to use a weapon of mass destruction because the white powder he mailed to his victims was not

5

real anthrax and was harmless. However, courts have repeatedly held that sending anthrax hoax letters violates § 2332a. *See e.g. United States v. Davila*, 461 F.3d 298 (2d Cir. 2006); *United States v. Guevara*, 408 F.3d 252 (4th Cir. 2005); *United States v. Lit*, Nos. 04-619, 07-903, 2007 WL 1725199 (E.D. Pa. June 12, 2007). The argument that Waagner is innocent of § 2332a "because there was no real weapon of mass destruction . . . fails for the simple reason that defendant [was found] guilty [of] 'threaten[ing] to use a weapon of mass destruction,' not the actual 'use' of such a weapon." *Lit*, 2007 WL 1725199, at *12 (quoting 18 U.S.C. §2332a). Whether a writing constitutes a threat depends on "whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury. In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant." *Davila*, 461 F.3d at 304-05 (citation omitted) (internal quotation marks omitted). "A reasonable person opening an envelope containing a white powdery substance, during the height of the anthrax crisis in this country, would doubtless fear immediate and future injury." *United States v. Zavrel*, 384 F.3d 130, 136 (3d Cir. 2004) (internal quotation marks omitted); *see also Davila*, 461 F.3d at 305 (reasonable jury could conclude that an anthrax hoax letter was a threat where "[t]he white powder was accompanied by references to anthrax and Osama Bin Laden, and it occurred not long after the well-publicized anthrax attacks of 2001.") The letters Waagner sent to women's reproductive health care clinics contained a white powdery substance that Waagner told recipients was anthrax. These letters were sent during the height of the anthrax crisis in 2001. The jury found that these letters constituted threats. There is nothing in the record to contradict the jury's conclusion that Waagner is guilty of threatening to use a weapon of mass destruction. There is no evidence that Waagner is actually innocent of the counts of conviction

for violating 18 U.S.C. § 2332a(a)(2).  Therefore, Waagner cannot rely on actual innocence to excuse the late filing of his § 2255 petition.

Waagner next argues that all of his claims are timely because equitable tolling applies. "[A] petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted); *see also Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 n. 1 (3d Cir.1998) (equitable tolling may apply to the one-year statute of limitations set forth in § 2255(f)).  "A statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice."  *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (internal quotation marks omitted).

Waagner contends that his "mental illness prevented him from looking at the legal process rationally," Pet. 21, and qualifies as an extraordinary circumstance that prevented him from filing a § 2255 petition.  Mental incompetence may constitute an extraordinary circumstance that justifies equitable tolling.  *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001). However, "mental incompetence is not a *per se* reason to toll a statute of limitations.  Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition."  *Id.*  (citation omitted).

Waagner alleges that "at the time a conventionally tolled Section 2255 motion would have expired in this case, [he] was still under the influence of the Axis I delusional disorder." Pet. 19.  Specifically, Waagner had the "delusion that he was 'God's warrior.' So much so that [he] did not consider the aftermath of his actions past the fight itself.  It was only after [his] mind had some time to heal that he could see the legal options open to him through post-conviction

remedies." *Id.* at 21.  In 2000, Waagner was diagnosed with Chronic Delusional Disorder.  However, there is no evidence that this mental condition affected Waagner's ability to file legal papers.  In fact, the record reveals that Waagner filed several submissions in this case, all of which were filed after his diagnosis of delusional disorder.  Waagner never alleges that he received any counseling or medical treatment for his mental condition, nor does he provide any more recent medical evaluations or records.  Although it is doubtful that Waagner's delusional disorder rises to the level of an extraordinary circumstance, even assuming it does, equitable tolling still does not apply because Waagner has not pursued his rights diligently.

"Under long-established principles, [a] petitioner's lack of diligence precludes equity's operation."  *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005).  In *Merritt v. Blaine*, the petitioner delayed filing his habeas petition based on the mistaken belief that he first had to exhaust his state court remedies by filing a second Post Conviction Relief Act (PCRA) petition prior to filing a habeas petition in federal court.  326 F.3d 157, 169 (3d Cir. 2003).  The petitioner argued that he was entitled to equitable tolling because, at the time he filed his second PCRA petition, it was uncertain under Pennsylvania law whether he was required to do so in order to exhaust his state court remedies.  *Id.*  The Third Circuit agreed that the law was uncertain at the time the petitioner filed his second PCRA petition.  *Id.*  However, the Third Circuit held that the petitioner was not entitled to equitable tolling because the petitioner waited more than two additional years to file his habeas petition after the law became clear.  *Id.* at 170.

Waagner argues that he could not rationally think about the legal process prior to the filing of his habeas petition because he was suffering from a delusional disorder that made him believe he was on a mission from God to destroy the abortion industry.  However, Waagner admits in his petition that by "early 2011 . . . [he] had begun to experience a serious change of

8

heart," Pet. 19, regarding his violent views toward women's reproductive health care clinics. Additionally, Waagner submits two letters he wrote in 2011 in which he apologizes for the anthrax hoax letters, advocates nonviolence, expresses shame for his past actions, and discusses the legal ramifications of his crimes. Waagner's admission and these letters clearly demonstrate that by mid-2011 Waagner was no longer suffering from a delusional disorder that prevented him from rationally thinking about the legal process. Although Waagner recovered from this alleged extraordinary circumstance by mid-2011, he waited more than two and a half years to file his habeas petition. As in *Merrit*, this lengthy delay precludes equitable tolling because Waagner has not pursued his rights diligently.

**IV. CONCLUSION**

For the reasons set forth above, I will deny Waagner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. A certificate of appealability will not issue.[3]

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to:

---

[3] In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir. 1999). Waagner has not made such a showing.